UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW JACKSON,

    Plaintiff,

Case No. 1:23-cv-259

Hon. Paul L. Maloney

v.

RICKY COLEMAN,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Andrew Jackson ("Jackson"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Jackson has sued Dr. Rickey Coleman, an employee of Wellpath and the "Regional Medical Administrator governed by MDOC." Compl. (ECF No. 1, PageID.1).[1] This matter is now before the Court on defendant's motion for summary judgment (ECF No. 22). Jackson did not oppose the motion.[2]

    **I.**    **Jackson's complaint**

The alleged incidents occurred at the MDOC's Muskegon Correctional Facility (MCF). Jackson set forth the following allegations. He was diagnosed with rheumatoid arthritis in 2006. Compl. at PageID.2. He experiences sharp pains in his joints which cause swelling,

---

[1] The Court notes that Dr. Coleman is named in the complaint as "Ricky Coleman."

[2] W.D. Mich. LCivR 7.2(c) states that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."

1

numbness, and measurable deterioration in function. *Id*. He walks with a cane and has a special accommodation for a bottom bunk. *Id*.

On July 7, 2022, MCF doctor Monika Honan evaluated Jackson, acknowledged that he had rheumatoid arthritis, and diagnosed him with possible signs of Lupas. *Id*. Dr. Honan "recommended and requested with the Regional Medical Administrator, Coleman that Jackson receive treatment from a neurologist." *Id*.

On August 5, 2022, MCF Physician Assistant (PA) Hoover evaluated Jackson. PA Hoover "also acknowledged Jackson's rheumatoid arthritis, recommended and requested to Dr. Coleman that Jackson receive treatment from a neurologist." *Id*.

On August 10, 2022, Dr. Coleman denied Dr. Honan's "recommendations and requests for Jackson to receive further treatment from a neurologist". *Id*. On August 11th and 17th, Dr. Coleman "denied PA Hoover's recommendations and requests for Jackson to receive further treatment from a neurologist." *Id*.

On August 20, 2022, Jackson filed a grievance against Dr. Coleman "for denying him proper medical care in spite of MCF medical staff's recommendations and requests." *Id*.

On September 15, 2022, PA Hoover evaluated and treated Jackson after he had submitted a kite complaining of severe pain in his joints. *Id*. at PageID.3. PA Hoover prescribed Jackson Celebrex and Mobic to manage the pain.³ *Id*. On September 30th, PA Hoover evaluated Jackson and "changed his medication to further manage pain." *Id*.

On October 19, 2022, PA Hoover evaluated Jackson, and "documented that pains that goes up and down his arm which causes numbness, decrease in grip strength, decrease in rotation of cervical spine to the left, and tenderness over spinous process." *Id*. PA Hoover "again

---

³ While Jackson refers to "Calabrey" in his complaint, it appears that he is referring to "Celebrex". *See* Medial Records at PageID.138.

requested further treatment from a neurologist to further evaluate the weakness and numbness for impingement." *Id*. On October 24th, Dr. Coleman denied PA Hoover's "recommendations and request for Jackson to receive further treatment from a neurologist." *Id*.

Jackson contends that Dr. Coleman "was deliberately indifferent to Jackson's health and prevented him from receiving further treatment from a neurologist as was recommended and requested by MCF medical staff." *Id*. Jackson claims that Dr. Coleman's actions violated his Eighth Amendment rights. *Id*. at PageID.3-4. For his relief, Jacks seeks an injunction ordering Dr. Coleman to provide medical treatment from a neurologist, as well as compensatory and punitive damages. *Id*. at PageID.4.

## II.     Motion for summary judgment

### A.     Legal standard

Defendant Dr. Coleman has moved for summary judgment for lack of exhaustion and on the merits. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

3

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Here, Jackson filed a "verified" complaint. *See* Compl. at PageID.5).  As a result, his allegations "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment." *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (internal quotation marks omitted).

While Jackson initiated this lawsuit with a verified complaint, he did not file a response in opposition to the motion for summary judgment.  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).  However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B. Lack of Exhaustion

Dr. Coleman contends that Jackson failed to exhaust his administrative remedies.

4

1.     **Exhaustion requirement**

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

2.     **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within

5

five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Dr. Coleman identified one grievance related to this claim, MCF 22-08-0985-28I ("985"). *See* Defendant's Brief (ECF No. 22, PageID.93-96); MDOC Prisoner Step III Grievance Report and Grievance 985 (ECF No. 22-3). This grievance referred to PA Hoover's request for a neurologist and Dr. Coleman's denial of the request on August 17, 2022. *See* PageID.206-207. The grievance was rejected at Step I because Jackson made "[n]o attempt to resolve." *Id.* at PageID.208. The rejection was upheld at Steps II and III. *Id.* at PageID.201-203. Based on this record, Jackson did not properly exhaust a grievance to support his constitutional claim against Dr. Coleman. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Dr. Coleman's motion for summary judgment should be granted on this basis.

6

### C. Eighth Amendment claim

#### 1. Legal standard

Jackson seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound

in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). "[T]his care qualifies as 'cruel and unusual' only if it is 'so grossly incompetent' or 'so grossly inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). "For prisoners to prove grossly inadequate care, moreover, courts generally require them to introduce medical evidence, typically in the form of expert testimony." *Id*.  In short, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation.  *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

2. **Discussion**

The medical records reflect that Jackson went offsite to see a rheumatologist on July 7, 2022.  Medical Records (ECF No. 22-1, PageID.108).  Dr. Mohan submitted orders for x-

rays and blood work, but did not submit an order or referral to a neurologist. *Id*. In this regard, Jackson's diagnosis on the referral form was for "Primary generalized (osteo)arthritis" (as opposed to rheumatoid arthritis).[4] *Id*.

On July 15, 2022, PA Hoover entered the orders for the blood work and x-rays. *Id*. at PageID.110-111. On July 21st, PA Hoover reviewed the x-ray results which revealed no acute processes (*id*. at PageID.112-135) and indicated she would forward the results on to rheumatology. *Id*. at PageID.136. On July 27th, PA Hoover received and reviewed some abnormal lab results for Jackson and indicated she would send them on to rheumatology. *Id*. at PageID.137.

On August 5, 2023, PA Hoover submitted a request for a recommended EMG on August 5, 2023. *Id*. at PageID.138. PA Hoover's request for "Neurology – EMG" was based on Jackson's age (57), history of joint pains and stiffness, mild swelling of hands and knees, an elevated ANA, and that Jackson was seen by rheumatology with a request for an EMG of bilateral upper and lower extremities. *Id*. at PageID.140. The request was denied for the following reasons:

> This request is not indicated based on the data provided. We don't order a testing just because the specialist recommended it. We need to know why it is needed. There is no objective data presented to support this request. If a new request is submitted, please provide objective data to support the request, per Dr. Coleman[.]

*Id*. at PageID.142.

As discussed, there was no recommendation or request for an examination by a neurologist as alleged in the complaint. The only request was for an EMG. Dr. Coleman explained in his affidavit that the requested referral was not supported in August 2022, but was supported in March 2023:

> 8. On August 11, 2022, I reviewed a request submitted for a bilateral upper and lower extremity EMG by Barabara Hoover, P.A. At the time of my review, I noted

---

[4] The Court notes that Jackson reported a history of rheumatoid arthritis. On June 3, 2022, RN Sandoval noted that Jackson had "[s]welling of the hands" and "rheumatoid nodules." *See* PageID.100-101.

9

that the information provided by PA Hoover was insufficient for me to fully evaluate the need for the requested procedure. I also explained to PA Hoover that a test is not ordered because a specialist recommended one. In order to approve the request, the provider has to provide information on why the test is needed so that I can make a determination if the test is medically necessary. At the time of my review, there was no objective data presented to support this request. I instructed PA Hoover to provide objective data to support a future request.

9. On October 5, 2022, I reviewed the EMG request for a bilateral upper extremity submitted by PA Hoover. provided by P.A. Hoover [sic] and determined that an alternative treatment plan was indicated based on that information. Based on PA Hoover's physical examination, I determined an EMG was not clinically indicated at that time based on the information provided. I documented the exam presented was incomplete. A thorough spine and upper extremity exam must be presented so that I could make for an informed decision regarding the off-site request. I informed PA Hoover to continue with conservative management, utilizing home exercises/PT and activity modification.

10. On October 24, 2022, I reviewed the bilateral upper extremity EMG requested by PA Hoover. At the time of my review, I determined that my previous ATP [alternative treatment plan] for continued conservative treatment including physical therapy and activity modification was appropriate based on the information provided.

11. On March 1, 2023, I reviewed the request for a lower extremity EMG as requested by PA Hoover. At the time of my review, I approved the EMG noting that based on my review of the information provided, a lower extremity EMG was supported.

12. On June 13, 2023, I reviewed a request submitted by Dr. Michael Tomaszczyk for a follow up appointment with Mr. Jackson's rheumatologist. Based on the information provided to me, I approved the request noting a visit with rheumatology was supported.

Coleman Aff. (ECF No. 22-2, PageID.194-195).

The record reflects that Jackson was receiving medical treatment for osteoarthritis and chronic degenerative arthritis.[5] Dr. Coleman found no basis for an EMG referral as of August 11, 2022. Upon receiving more information, Dr. Coleman chose to provide conservative treatment based on Jackson's condition on October 5, 2022. After about five months on that treatment plan,

---

[5] Later records from November 29, 2022 referred to Jackson's condition as "Chronic Degenerative arthritis" (PageID.165).

Dr. Coleman approved a request for an EMG on March 1, 2023. Dr. Coleman's disagreement with a requested referral does not rise to the level of a federal constitutional claim. Differences of opinion between prison doctors does not show deliberate indifference but "suggest, at most, a difference in medical opinion, which is not actionable under § 1983." *Lane v. Wexford Health Sources (Contreator)*, 510 Fed. Appx. 385, 388 (6th Cir. 2013). Accordingly, Dr. Coleman's motion for summary judgment should be granted on the merits of the complaint as well.

### III. Recommendation

For these reasons, I respectfully recommend that defendant Dr. Coleman's motion for summary judgment (ECF No. 22) be **GRANTED** and that this lawsuit be **terminated**.


Dated: July 26, 2024                     /s/ Ray Kent
                                         RAY KENT
                                         United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).